UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JAN 25 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-17-GWU

CLARENCE B. SPARKS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Sparks v. Barnhart, London Civil Action No. 01-526 (E.D. Ky.), to obtain judicial review of an administrative decision denying his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). After a remand for further consideration prompted by the undersigned's Memorandum Opinion, Order and Judgment of October 23, 2002 (Tr. 305-316), a negative administrative decision again ensued (Tr. 244-253). The continuing appeal is again before the undersigned on cross-motions for summary judgment, having been docketed under the above-styled civil action number.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

1

Sparks

Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under

2

certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

3

905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

In the previous review of the plaintiff's appeal, the undersigned had determined that as no treating source mentioned greater physical restrictions than the administrative law judge (ALJ) used (i.e., a limited range of light level work with restrictions on postural activities and environmental tolerances), and since the factors were compatible with the opinions issued by the consultative examiners, the assessment of Sparks' physical condition had been adequate. (Tr. 315). However, the Court did find fault with the fact that no mental restrictions were included in the hypothetical question despite the limitations noted by Examiner Lynne, which had not

been properly rebutted by the testifying medical expert. (Tr. 315-316). Thus, the case was remanded for further consideration of the mental factors noted in connection with Lynne's evaluation. (Tr. 316).

The latest decision by an administrative law judge (ALJ) was issued in March of 2004. (Tr. 244-253). The ALJ found that the plaintiff suffered physically from a history of coronary artery disease, low back pain and was status post myocardial infarction (Tr. 252) and he used the same physical restrictions as previously (Tr. 249), noting that Dr. William Lester's assessment (Tr. 224-227) was persuasive and rejecting opinions from Dr. Sandra Dionisio (Tr. 270-274) and Consultative Examiner Lamb (Tr.177-179 ). This was appropriate: the relative merit of the assessments of Lester and Lamb had previously been discussed by the Court and the newly offered opinion of Dionisio, although from a treating source, could well be discounted--despite the plaintiff's argument to the contrary--since the physician herself admitted that she did not perform a disability evaluation and could not assess most factors (e.g., Tr. 271). Thus, the physical factors continue to have been adequately addressed.

In response to the Court's previous concern about the mental limitations suffered by the plaintiff, additional measures were taken during the administrative reconsideration of the case. In the previously-mentioned William Lynne report, the examiner had noted an estimated borderline intellectual functioning and "fair" abilities

to follow work procedures, handle simple instructions, handle detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work with or near others without being distracted by them, make simple work-related decisions, complete a normal workday or workweek, perform at a consistent pace. (Tr. 192). After the remand, the psychologist performed another evaluation of the plaintiff, this one in 2003. (Tr. 291). After examining the plaintiff, he diagnosed a depressive disorder, and estimated borderline intellectual functioning (with IQ scores decreased by depressive features, the effect of prescription drugs and questionable effort); Lynne then indicated that the plaintiff would have "satisfactory" ability in all areas except for "limited but not totally precluded" ability in dealing with work stresses, maintaining attention and concentration, handling detailed job instructions, behaving in an emotionally stable manner and demonstrating reliability. (Tr. 297-298). Only the ability to perform complex job instructions was described as "none." (Tr. 298). The ALJ also called a medical expert, Dixie Moore, to testify at the administrative hearing; she indicated that she felt that some of the plaintiff's activities and history (i.e., being in regular education classrooms, ability to make proper change during purchases, handling his own money, inviting friends over to play cards from time to time, having held a job as a school bus driver) were beyond what one would expect from someone with mild

Sparks

mental retardation. (Tr. 328). As the hypothetical mental factors (Tr. 357-358) tracked Lynne's second assessment, and since the testimony of the new medical expert provided an additional basis to reject the early IQ scores, described as being done with "poor" or "highly questionable" effort (Tr. 191, 295) anyway, the mental status of the plaintiff has now been adequately considered.

The decision will be affirmed.

This the 28 day of January, 2006.

G. WIX UNTHANK
SENIOR JUDGE